IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DIANNE HIGBEE, and JAY
HIGBEE,

        Plaintiffs,

v.                          Case No.

CITY OF JACKSONVILLE,

        Defendant.

_____/

## COMPLAINT AND DEMAND FOR A JURY TRIAL

COME NOW Dianne and Jay Higbee and complain and allege against the City of Jacksonville as follows:

### NATURE OF THE ACTION

1.     Dianne and Jay Higbee reside in a home on the banks of the St. Johns River in Jacksonville. They have owned and resided on this property since 2005. A large, underground drainage pipe caries storm water from an inlet in the Higbees' front yard, past their house, and into the river. For many years, the City has claimed the right to channel storm water from city streets onto the Higbee property to make use of the drainage pipe.

2.     In 2013, the City sued the Higbees in state court claiming an easement to use the drainage pipe and seeking an injunction prohibiting the

1

Higbees from interfering with the City's use of the pipe. The Higbees counterclaimed to quiet title to their property.

3. The state court ruled that the City did not have a written easement to use the drainage pipe, and the City dismissed its claim against the Higbees without prejudice. The action remains pending on the Higbees' counterclaim to quiet title, and the City claims in that case that it has a prescriptive easement or some other right to drain storm water through the drainage pipe on the Higbees' property.

4. The Higbees discovered in 2018 that the drainage pipe was causing erosion to their property, which in turn was causing subsidence damage to their home.

5. This is an action for just compensation under the Takings Clause of the Fifth Amendment to the United States Constitution, under the Fourteenth Amendment to the United States Constitution, and under 42 U.S.C. § 1983. This is an action for just compensation under Article X § 6 of the Florida Constitution. And this is an action under the common law of Florida for unreasonable use of an easement or failure to maintain an easement—inasmuch as the City has an easement to drain water across the Higbee property—such that the burden of the easement on the Higbees' property was unreasonably increased. The Higbees seek compensation in this

2

action for the damage to their house and other areas of their property caused by the City's use of the drainage pipe.

6.     The Higbees are required to bring this action at this time—prior to a final decision in the state court action—in order to avoid the risk that their claims will be barred by the four-year statute of limitations of section 95.11(3), Florida Statutes, which is made applicable to their federal takings claim by 42 U.S.C. § 1983.

7.     The Higbees do not in this action seek just compensation for the City's taking of an easement to drain water across their property, which alleged easement itself is the subject of the state court action.  Instead, in this action the Higbees seek compensation only for the taking of and harm to property apart from the alleged easement itself.

8.     In the event the City secures a final judgment in the state court action granting the City an easement or other right to use the Higbees' property, the Higbees intend to consider whether they then have a separate claim for just compensation for the City's taking of that interest in their property.

## PARTIES, JURISDICTION, AND VENUE

9.     The plaintiffs are Dianne Higbee and Jay Higbee, who are lawfully married to each other.

10. The defendant is the City of Jacksonville. At all times relevant hereto, the City was acting under color of state law, local ordinance, and government practice of the City of Jacksonville.

11. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. This Court has supplemental subject matter jurisdiction of the state-law claims in this action pursuant to 28 U.S.C. § 1367 because the state-law claims are so related to the federal claims that they form part of the same case or controversy.

12. Venue is proper in this judicial district under 28 U.S.C. § 1391 because the property that is the subject of this action is situated in this judicial district. Specifically, the Higbee property, which is the subject of this action, is located at 3589 Beauclerc Circle North, Jacksonville, within Duval County, Florida.

## FACTS COMMON TO ALL COUNTS

13. The Higbees' property has been in the Higbee family for generations. Jay Higbee's grandfather, John Higbee Jr., first acquired the property in the 1960's.

14. Joe Worth Sr. subdivided a tract of land including the Higbee property. John Higbee Jr. purchased the Higbee property from Joe Worth Sr.

4

4890-9293-0816.6

under an agreement for deed in 1965. The agreement was fully performed, and the property was conveyed by deed to John Higbee Jr. in 1969.

15.     John Higbee Jr. conveyed the property to himself and his wife, Virgil Higbee, in 1989. Virgil Higbee conveyed the property to a trust for her benefit, and the eventual trustee of that trust was her son Ben Bailey III. Ben Bailey III received title free of trust in 1999. And in 2005, following Virgil Higbee's death, Ben Bailey III conveyed the property to Jay and Dianne Higbee.

16.     The Higbees held the property in a trust for a period, and title is currently held in the name of Dianne Higbee alone.

17.     The Higbees have lived at the Higbee property as their primary residence since 2005, and it is their homestead.

18.     Joe Worth Sr. had the drainage pipe installed on the Higbee property in the 1960's at the request of John Higbee Jr. after Hurricane Dora hit Jacksonville.

19.     The drainage pipe is approximately 450 feet long, 24 inches in diameter, and made of concrete.

20.     In 1977, two memoranda of the City reflect that the City asked John Higbee Jr. for an easement to use the drainage pipe but John Higbee Jr. refused to grant the easement.

4890-9293-0816.6

21.    At some undetermined time, the City began channeling storm water from city streets onto the Higbee property to use the drainage pipe to carry the storm water to the St. Johns River. This was not the natural flow of storm water in the area.

22.    In 2006, shortly after moving onto the property, the Higbees wished to make some improvements, including the completion of a perimeter wall around the property and repairs to the drainage pipe. To avoid conflict with the City, the Higbees provided notice to the City of their intended improvements. The City wrote back to the Higbees, claimed an easement covering the drainage system, and encouraged them not to disturb the drainage system.

23.    The Higbees disagreed that the City had an easement and therefore sued the City to quiet title later that same year.

24.    The parties attended mediation in 2009. While they did not formally settle the action at mediation, the parties agreed to the principal terms of a settlement. Then, after more than a year of working with the City bureaucracy to produce a written settlement agreement, the Higbees filed a motion asking the state court to compel all necessary decision-makers with the City to attend another mediation session. At the hearing on the motion in November 2010, the Court indicated that the Higbees' motion would be

6

4890-9293-0816.6

granted. Just after the hearing, counsel for the City asked the Higbees what they wanted to dismiss their lawsuit. The City was not pressing the issue of an easement at the time, so the Higbees said they wanted a permit to complete their perimeter wall. Counsel for the City said they would receive the permit if they simply applied for it.

25.   Believing they had achieved the outcome they sought in the litigation, the Higbees dismissed their quiet title action without prejudice in November 2010.

26.   The next month, the Higbees applied for a permit to complete their wall.

27.   The City promptly granted the Higbees' application for a permit to complete their wall.

28.   In April 2011, however, the City wrote to the Higbees and asserted they unlawfully completed the wall because the wall blocked the flow of water onto the Higbee property. The City took no further action on this matter until May 2013.

29.   In May 2013, the City revoked the Higbees' permit and simultaneously filed suit against them on the theory that the Higbees had blocked the City's easement to drain water across the Higbee property.

4890-9293-0816.6

30.    The Higbees counterclaimed to quiet title.  This state-court action remains pending.

31.    The Higbees believe the City has no interest in their property allowing the City to drain storm water across it.  In the event the state-court litigation results in the City obtaining such an interest without paying just compensation for it, the Higbees intend to consider whether they may file a takings claim in this Court seeking just compensation.  The Higbees believe such a claim is not ripe at this time under the teaching of Pasoag Reservoir & Dam LLC v. Rhode Island, 217 F. Supp. 2d 206 (D.R.I. 2002), aff'd 337 F.3d 87 (1st Cir. 2003).

32.    In the course of litigating the state-court action, the Higbees hired an engineer to investigate the drainage pipe and determine whether the City's use of the drainage pipe was causing harm to other areas of the Higbee property.

33.    The engineer determined that the drainage pipe was causing subsidence, which was damaging the Higbees' home.

34.    By channeling storm water onto the Higbee property and through the drainage pipe, the City increased the intensity of use of the drainage pipe, which in turn caused gradual erosion of the land adjacent to the drainage pipe, which erosion is causing subsidence and damaging the Higbees' home.

8

35. On information and belief, the erosion and subsidence would not have occurred but for the City's channeling of storm water onto the Higbee property.

36. The erosion and subsidence were a foreseeable or predictable result of the City's channeling of storm water onto the Higbee property.

37. On information and belief, the City in or about 2004 installed a liner in the drainage pipe to facilitate the City's use of the Higbee property to drain storm water.

38. On information and belief, the City did not have permission from the owner of the Higbee property to install the liner.

39. On information and belief, the City installed the liner improperly, in a way that caused the pipe to cause gradual erosion to the surrounding land, which is in turn causing subsidence and damaging the Higbees' home.

40. On information and belief, the erosion and subsidence would not have occurred but for the City's installation of the liner.

41. The erosion and subsidence were a foreseeable or predictable result of the City's improper installation of the liner.

42. The City has prevented the Higbees from repairing the drainage pipe and stopping the erosion themselves.

9

43.    The City used multiple methods to prevent the Higbees from repairing the drainage pipe and stopping the erosion themselves. Among other methods, the City threatened to enforce a city ordinance against the Higbees for obstructing a drainageway and communicated to the Higbees that they could not lawfully interfere with the City's claimed easement or other drainage rights pending the outcome of the litigation in state court.

44.    But for the City's actions, the Higbees would have conducted repairs themselves to stop the erosion and subsidence.

45.    The erosion and subsidence were a foreseeable or predictable result of the City's actions to prevent the Higbees from repairing the drainage pipe and stopping the erosion themselves.

46.    On information and belief, the City has failed to properly maintain the drainage pipe and other facilities crossing the Higbees' property, in which the City claims it has an easement, together with other drainage facilities within the City right-of-way.

47.    As a result of this failure to conduct proper maintenance of its alleged easement and drainage facilities, the City has caused erosion and subsidence to the Higbees' property outside the area of the alleged easement itself.

10

4890-9293-0816.6

48.    But for the failure to conduct proper maintenance, the erosion and subsidence would not have occurred.

49.    The erosion and subsidence were a foreseeable or predictable result of the City's failure to conduct proper maintenance of its alleged easement.

COUNT I

JUST COMPENSATION UNDER THE FIFTH<br>AMENDMENT AND 42 U.S.C. § 1983

50.    The Higbees incorporate the allegations of paragraphs 1 through 49 as if fully stated herein.

51.    The City's drainage of storm water across the Higbee property is a public use of the Higbee property for which just compensation is required under the Fifth Amendment to the United States Constitution.

52.    By this public use of the Higbee property, the City has gradually taken soil from areas of the Higbee property outside of the area of the drainage pipe itself, to wit, the ground near and under the Higbee home.

53.    By using the Higbee property to drain storm water, the City has physically infringed the Higbees' property interest in areas of the Higbee property adjacent to but outside the area of the drainage pipe itself, to wit, the Higbee home and the ground supporting it.

11

54.    The City's use of the Higbee property constitutes a permanent physical occupation of the property outside the area of the drainage pipe itself, to wit, the ground near and under the Higbee home, or the functional equivalent of a permanent physical occupation of such property.

WHEREFORE, the Higbees respectfully pray that this Court enter judgment in favor of the Higbees and against the City:

a.    awarding just compensation for the taking of the Higbees' property outside the area of the drainage pipe itself;

b.    awarding reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

c.    awarding such other and further relief as the Court finds just and proper.

## COUNT II

### INVERSE CONDEMNATION AND FULL COMPENSATION UNDER ARTICLE X, SECTION 6, OF THE FLORIDA CONSTITUTION

55.    The Higbees incorporate the allegations of paragraphs 1 through 49 as if fully stated herein.

56.    The City's drainage of storm water across the Higbee property is a taking of the Higbee property for a public purpose for which full compensation is required under Article X, section 6, of the Florida Constitution.

12

4890-9293-0816.6

57. By its use of the Higbee property, the City has gradually taken soil from areas of the Higbee property outside the area of the drainage pipe itself, to wit, the ground near and under the Higbee home.

58. By using the Higbee property to drain storm water, the City has physically infringed the Higbees' property interest in areas of the Higbee property adjacent to but outside the area of the drainage pipe itself, to wit, the Higbee home and the ground supporting it.

59. The City's use of the Higbee property constitutes a permanent physical occupation of the property outside the area of the drainage pipe itself, to wit, the ground near and under the Higbee home, or the functional equivalent of a permanent physical occupation of such property.

60. The City's appropriation of the Higbee property outside the area of the drainage pipe itself, to wit, the ground near and under the Higbee home, constitutes a continual trespass and an effective taking of the Higbees' property.

61. The City's use of the Higbee property constitutes a substantial interference with the Higbees' rights to their property outside the area of the drainage pipe itself, to wit, the Higbee home and the ground supporting it, for more than a momentary period. This substantial interference is reasonably

4890-9293-0816.6

expected to continuously recur, resulting in a substantial deprivation of the beneficial use of the Higbee property.

62. The City has not paid the Higbees any compensation for the taking of the property outside the area of the drainage pipe itself.

63. The Higbees have been compelled to retain the undersigned counsel to assist and represent them, and have agreed to pay a reasonable fee for such services, which fee should be charged to the City pursuant to law.

WHEREFORE, the Higbees respectfully pray that this Court enter judgment in favor of the Higbees and against the City:

    a. awarding full compensation for the taking of the Higbees' property outside the area of the drainage pipe itself;

    b. awarding reasonable attorney's fees and costs pursuant to article X, section 6, of the Florida Constitution and Joseph B. Doerr Trust v. Central Fla. Expressway Auth., 177 So. 3d 1209 (Fla. 2015); and

    c. awarding such other and further relief as the Court finds just and proper.

COUNT III

NEGLIGENCE: FAILURE TO USE AND
MAINTAIN EASEMENT REASONABLY

64. The Higbees incorporate the allegations of paragraphs 1 through 49 as if fully stated herein.

14

65. To the extent the City has an easement to drain storm water across the Higbee property, the City has the duty to use and maintain the easement reasonably so as to avoid damage to the Higbee property.

66. The City failed to use and maintain the easement reasonably.

67. As a result of the City's failure to maintain the easement, the easement has caused and will continue to cause damage to the Higbee property adjacent to but outside the area of the drainage pipe itself, to wit, the Higbee home and the ground supporting it.

68. The damage caused to the Higbee home and the ground supporting it is approximately $740,000.

69. The Higbees presented to the City a written claim for such damages—in compliance with section 768.28, Florida Statutes—on September 21, 2018, and the City has not made final disposition of the Higbee's claim.

WHEREFORE, the Higbees respectfully pray that this Court enter judgment in favor of the Higbees and against the City in an amount to be proved at trial, which amount is approximately $740,000.

//

//

//

//

4890-9293-0816.6

## JURY DEMAND

70.     The Higbees demand trial by jury on all issues so triable.

DATED: March 29, 2022.

W. Bradley Russell
Fla. Bar No. 29492
Foley & Lardner LLP
One Independent Drive
Suite 1300
Jacksonville, Florida 32202
Tel. 904-633-8928
Email: wbrussell@foley.com

Counsel for Dianne and Jay Higbee

16

4890-9293-0816.6